**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 7, 2014**

# In the Court of Appeals of Georgia

A14A1353. CHRISTIAN v. THE STATE.

DILLARD, Judge.

Following a bench trial, Billy Wayne Christian was convicted in probate court of driving under the influence and violating conditions of limited driving. He appealed to the superior court, and his convictions were affirmed. Now, on appeal to this Court, Christian contends that the probate court erred in denying his motion to suppress the State's evidence and in admitting Georgia Crime Information Center ("GCIC") printouts when the State failed to lay a proper foundation for same. For the reasons noted *infra*, we affirm in part and reverse in part.

Viewed in the light most favorable to the guilty verdict,[1] the record reflects that at 8:26 a.m. on July 27, 2010, a law-enforcement officer with the Whitfield County

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

Sheriff's Office observed Christian's pickup truck "gripping" the pavement while making a distinct scratching sound. The officer also noticed that the truck bore a Tennessee license plate, which, in light of the erratic driving, further raised his suspicions about the vehicle being in this particular subdivision that early in the morning. Accordingly, the officer relayed the tag information to dispatch and was informed that the tag returned as "not on file." The officer then stopped the truck to investigate further.

Immediately upon approaching the vehicle, the officer detected the odor of an alcoholic beverage and asked Christian to exit the truck to perform field-sobriety tests. During the investigation that ensued, the officer also learned from dispatch that Christian's license was subject to certain travel restrictions, which he violated because he was driving to a store. Thereafter, Christian exhibited clues of impairment on each field-sobriety test administered, and then returned a level of .137 and .139, respectively, on two Intoxilyzer 5000 tests. Christian was later tried and convicted of the above-referenced offenses. This appeal follows.

1. First, Christian contends that the trial court erred in denying his motion to suppress the State's evidence when the officer lacked a reasonable and articulable suspicion to stop his vehicle. We disagree.

2

To begin with, in considering a trial court's denial of a motion to suppress, this Court construes the evidence in favor of the court's ruling, "and we review de novo the trial court's application of the law to undisputed facts."[2] Furthermore, we must defer to the trial court's "determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous."[3] And in reviewing the denial of a motion to suppress, we consider "all the evidence of record, including evidence introduced at trial."[4]

Additionally, we bear in mind that stopping and detaining a driver to check his license and registration is appropriate when an officer has a reasonable and articulable suspicion that "the driver or vehicle is subject to seizure for violation of the law."[5] In this respect, we have held that a reasonable and articulable suspicion

---

[2] *Reid v. State*, 321 Ga. App. 653, 653 (742 SE2d 166) (2013) (punctuation omitted); *accord Lindsey v. State*, 287 Ga. App. 412, 412 (651 SE2d 531) (2007).

[3] *Reid*, 321 Ga. App. at 653 (punctuation omitted); *accord Lindsey*, 287 Ga. App. at 412.

[4] *Reid*, 321 Ga. App. at 653 (punctuation omitted); *accord Lindsey*, 287 Ga. App. at 412.

[5] *Hernandez-Lopez v. State*, 319 Ga. App. 662, 663 (1) (738 SE2d 116) (2013) (punctuation omitted); *see also Delaware v. Prouse*, 440 U.S. 648, 663 (VII) (99 SCt 1391, 59 LE2d 660) (1979) ("[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an

3

must be "an objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and that this determination can only be made after considering the totality of the circumstances."[6]

Here, the officer who stopped Christian did so after dispatch relayed that his Tennessee tag number returned as "not on file." And after doing so, the officer investigated Christian's registration of the vehicle and the legality of the tag because, according to the officer's testimony, a return of "not on file" means that the tag has not been registered. Indeed, it is a misdemeanor to "operate any vehicle required to be registered in the State of Georgia without a valid numbered license plate properly validated, unless such operation is otherwise permitted . . . ,"[7] and this registration requirement applies to *nonresidents* and *out-of-state visitors* as well.[8] Accordingly,

---

automobile is not registered, or that either the vehicle or the occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.").

[6] *Hernandez-Lopez*, 319 Ga. App. at 663-64 (punctuation omitted); *accord Humphreys v. State*, 304 Ga. App. 365, 366 (696 SE2d 400) (2010).

[7] OCGA § 40-2-8 (b) (2) (A).

[8] *See* OCGA § 40-2-90 (b) (3) ("To be eligible for the exemptions provided for in paragraph (1) or (2) of this subsection, a nonresident or visitor shall have fully complied with the laws relating to the registration of motor vehicles of the state or

4

the officer had a reasonable and articulable suspicion justifying his stop of Christian, and the trial court did not err in denying Christian's motion to suppress.[9]

Christian also argues that the trial court erred in permitting the officer to testify as to what dispatch told him regarding the tag's return as "not on file," contending that this testimony was hearsay. However, as the trial court properly determined, this testimony was used not to prove the truth of the matter asserted, but was instead

---

territory wherein he resides, and the registration number and initial letter of such state or territory shall be displayed and plainly visible on such motor vehicles.").

[9] *See Jordan v. State*, 223 Ga. App. 176, 178 (1) (477 SE2d 583) (1996) (holding that stop of defendant was justified when officer did so to investigate the operation of a motor vehicle with an expired license tag); *see also United States v. Santana-Gomez*, Case No. CR–12–175–M, 2012 WL 3946268, at *2 (II) (A) (W.D. Okla. 2012) (holding that officer had a reasonable and articulable suspicion to stop defendant when registration check on vehicle tag returned as "not on file" and officer suspected that the vehicle might not be registered); *United States v. Lee-Speight*, Case No. 10–40035–01–SAC, 2010 WL 2653412, at *6 (D. Kan. June 29, 2010) (same); *United States v. Franklin*, Case No. 09–40042–JAR, 2009 WL 3335602, at *4-5 (II) (A) (D. Kan. Oct. 15, 2009) (same); *State v. Kramer*, Case No. 104,578, 2011 WL 768034, at *3 (Kan. Ct. App. 2011) (same); *cf. State v. Dixson*, 280 Ga. App. 260, 262-63 (633 SE2d 636) (2006) (holding that officer lacked a reasonable and articulable suspicion to justify stop from a database return of "unknown" insurance status when officer "did not testify that an 'unknown' status likely meant that [the defendant's] car was uninsured" or "testify about any prior experience or training he had with such a response from an NCIC search or why the database might produce such a response").

5

proffered to explain the officer's conduct in deciding to stop the truck and initiate an investigation.[10] Accordingly, this enumeration of error is likewise without merit.

2. Next, Christian argues that the trial court erred by permitting the State to introduce into evidence GCIC printouts without first laying the proper foundation. We agree.

Former OCGA § 24-3-17 provides that any court may "receive and use as evidence in any case information otherwise admissible from the records of the Department of Public Safety or the Department of Driver Services obtained from any terminal lawfully connected to the Georgia Crime Information Center without the need for additional certification of those records."[11] Thus, we have held that, pursuant

---

[10] *See Stallings v. State*, 319 Ga. App. 587, 589 (2) (a) (737 SE2d 592) (2013) ("The record shows that the dispatch description of the vehicle was admitted for the limited purpose of explaining the officer's conduct in responding to the dispatch call and investigating Stallings's vehicle. As such, the admission of the dispatch description was not erroneous."); *see also Herieia v. State*, 297 Ga. App. 872, 875 (2) (678 SE2d 548) (2009) (holding that officer's testimony regarding information he received from dispatch was properly admitted, not to establish the truth of the matter asserted, but to explain his conduct in investigating the defendant).

[11] Former OCGA § 24-2-17 (b) (2011). We note that Christian was tried in 2011, making the former evidence code applicable. *See* Ga. L. 2011, p. 99, § 101 (providing that Georgia's new evidence code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). However, the relevant provision of former OCGA § 24-3-17 (b) has been recodified in the new evidence code at OCGA § 24-9-924 (a).

to the plain terms of the statute, the State presents a sufficient foundation for the admission of GCIC printouts when it shows that the document was "obtained from a computer terminal lawfully connected to the GCIC."[12] And we have further held that the State accomplishes this when a witness testifies to *personally* obtaining the printouts from a GCIC terminal[13] or identifies the printouts as having been obtained from a specific GCIC terminal,[14] but not when a witness merely testifies to obtaining

_____

[12] *Thomas v. State*, 196 Ga. App. 88, 91 (4) (395 SE2d 615) (1990).

[13] *See Fannin v. State*, 267 Ga. App. 413, 414 (1) (599 SE2d 355) (2004) (holding that State established the necessary foundation for admission when an officer "testified that he was certified to run driving histories and that he obtained a printout of [the defendant's] driving history from an approved computer terminal at the Department of Public Safety"); *Smith v. State*, 247 Ga. App. 516, 517 (1) (544 SE2d 208) (2001) (holding that State established the necessary foundation for admission when "a certified GCIC operator testified that she obtained the computer printouts from a GCIC terminal"); *see also Worthy v. State*, 252 Ga. App. 852, 853 (1) (557 SE2d 448) (2001) (holding that State presented at least circumstantial evidence that GCIC terminal was lawfully connected when it "offered evidence that . . . an investigator with the solicitor's office[ ] was trained and authorized to access the driving record and that she retrieved the information through a computer connected to the GCIC").

[14] *See Jackson v. State*, 228 Ga. App. 877, 878 (1) (492 SE2d 897) (1997) (holding that State established the necessary foundation for admission when a certified GCIC coordinator "identified State's Exhibit 1 via the 'origination agency identity number'" and the Fulton County Solicitor's number, before further testifying that the Fulton County Solicitor's computer terminal is "connected to the GBI ([Georgia Bureau of Investigation]), Panthersville" and confirming that the exhibit was a "GCIC, criminal history, driver's history" (punctuation omitted)); *see also*

7

a printout from some other source[15] or when the State only *argues* that a printout was obtained from a lawfully connected terminal.[16]

Here, an employee of the probate court's clerk's office testified that she was *not* authorized to access the GCIC computer but that she had experience reading GCIC printouts and criminal histories. When presented with the State's exhibit, which purported to be a GCIC printout on Christian, the employee testified that it was

---

*Thomas*, 196 Ga. App. at 91 (4) ("Testimony showed that the document in question here was obtained from an Athens police department terminal lawfully connected to the GCIC computer. Pursuant to the statute, nothing more is required.").

[15] *See Tolbert v. State*, 227 Ga. App. 647, 647 (490 SE2d 183) (1997) (holding that State failed to lay the necessary foundation for admission when "an employee of the Coweta County Solicitor's Office testified that she had physically obtained a copy of [the defendant's] driving history from the State Patrol office"); *see also Mordica v. State*, 319 Ga. App. 149, 155-56 (4) (736 SE2d 153) (2012) (physical precedent only) (holding that appellant had not properly preserved objection for appellate review but noting that, although State presented testimony that an officer used the GCIC database to determine that appellant had a history of drug convictions, the State "never elicited testimony from [the officer] that he had, in fact, pulled the GCIC report" from a terminal lawfully connected to the GCIC before the State admitted the report as evidence).

[16] *See Tipton v. State*, 213 Ga. App. 764, 765 (2) (445 SE2d 860) (1994) ("Although the record in this case seemingly was obtained from . . . a computer [lawfully connected to GCIC], no witness testified that it was so obtained. Instead, the prosecutor merely represented in argument that the record was obtained from such a computer. This is not evidence, and thus, we find the prosecutor also did not lay an adequate foundation for introduction of the driver's record." (punctuation omitted)); *accord Waters v. State*, 210 Ga. App. 305, 306-07 (1) (436 SE2d 44) (1994).

8

a GCIC printout "that was obtained in our office" and that two individuals employed in the clerk's office were certified to access the GCIC computer.[17] She further testified that the office had four terminals that could access the GCIC database; that, as far as she knew, all were properly connected; and that only certified clerks were authorized to access the GCIC database in the office. Additionally, she testified that each certified operator had a unique operator number but that, because she was not a certified operator, she did not know the identification numbers for those individuals in the office. Finally, reading the printout, the employee testified that as of the date of Christian's arrest, his driver's license was suspended.

Christian argued below, and argues again on appeal, that the State failed to lay a proper foundation for the admission of the GCIC printout. We agree. The State's witness, although generally familiar with GCIC printouts and how to read criminal histories, did not personally obtain the GCIC printout at issue, was not certified to access a GCIC terminal, and had no personal knowledge as to who accessed the GCIC terminal to acquire the relevant printout. Additionally, although the probate-

---

[17] Given the late hour of the trial, the two individuals certified to access GCIC reports had since gone home at the time the State presented the court employee's testimony, and the State had not subpoenaed either of the certified individuals, notwithstanding Christian's repeated objections.

9

court employee testified that the printout was obtained from a terminal located in that courthouse, she did not provide any detail as to how she could make such a determination and, in fact, testified that because she was not certified to access GCIC reports, she could not identify unique GCIC operator numbers. Accordingly, the testimony in the case *sub judice* was tenuous at best and insufficient to satisfy the strict requirement of former OCGA § 24-3-17 (b) that, prior to admission, the State must establish that a GCIC printout was obtained from a computer terminal lawfully connected to the GCIC.[18]

The testimony by the probate-court employee as to the status of Christian's license at the time of his arrest was the *only* evidence the State presented that Christian was driving in violation of OCGA § 40-5-65, which makes it a crime to operate a motor vehicle in violation of the conditions of a limited driving permit.[19] Accordingly, because the State failed to lay the proper foundation, this evidence was

---

[18] *See Tolbert*, 227 Ga. App. at 647; *cf. Jackson*, 228 Ga. App. at 878 (1).

[19] OCGA § 40-5-65 (j) ("Any permittee who operates a motor vehicle in violation of any condition specified on the permit shall be guilty of a misdemeanor.").

inadmissible hearsay, and the evidence was insufficient to support Christian's conviction for this offense.[20]

As such, for all the foregoing reasons, we affirm Christian's DUI conviction and reverse his conviction for violating conditions of limited driving.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Miller, J., concur.*

---

[20] *See Tolbert*, 227 Ga. App. at 647-48 (reversing conviction for driving with a revoked or suspended license when the State failed to lay a proper foundation for the admission of driving history).