**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2016**

# In the Court of Appeals of Georgia

A16A0086. THE STATE v. BLANCHARD.

DILLARD, Judge.

Wendy Blanchard was arrested for driving under the influence of alcohol less safe ("DUI"), driving with a suspended license, and an open-container violation. After her arrest, Blanchard moved to suppress statements that she made to the arresting officer, and following a hearing, the trial court granted the motion. In doing so, the court also found that the arresting officer lacked sufficient probable cause to arrest Blanchard for DUI. The State appeals,[1] challenging the trial court's finding that there was insufficient probable cause to support Blanchard's arrest. For the reasons set forth *infra*, we affirm.

---

[1] *See* OCGA § 5-7-1 (a) (4).

Viewed in the light most favorable to the trial court's ruling,[2] the evidence shows that on July 23, 2014, at approximately 3:00 p.m., Ethan Taffar, an officer with the Dawson County Sheriff's Office, was driving his patrol car when he saw Blanchard's vehicle, which was a few cars ahead of him, merge into the "gore area" of the highway. Taffar then pulled up behind her because it appeared that she was having car trouble, and he wanted to ask if she needed assistance. When Taffar asked her if everything was alright, Blanchard told him that she had run out of gas, and he offered to drive her to a nearby gas station. Once Blanchard was in his patrol car, Taffar asked to see her license, but Blanchard stated that she did not have it with her. Taffar then asked for her name and date of birth, and she gave him the name "Gloria Williams." But when Taffar told Blanchard that he could not find that person in the relevant database, Blanchard promptly provided her real name and date of birth, explaining that she initially thought that he wanted to know the name of the person who owned the car. Taffar then ran a check on Blanchard and discovered that she had a suspended license. As a result, he exited the vehicle, went around the car to Blanchard's door, and arrested her for driving with a suspended license.

---

[2] *See, e.g.*, *Christian v. State*, 329 Ga. App. 244, 245 (1) (764 SE2d 573) (2014).

2

Next, Taffar made arrangements for Blanchard's vehicle to be towed before transporting her to a detention center. During the transport, Taffar asked Blanchard if she had any contraband in her purse. Blanchard said no at first, but then admitted that she had a large plastic cup in her purse with a mixture of vodka and Kool-Aid. When Taffar asked Blanchard how much alcohol she had consumed that day, she responded that "she had a few before she left her house and then she was mixing [a drink] while she was going down the road to drink when she got home."

After they arrived at the detention center, Taffar read Blanchard her *Miranda* rights.[3] And it was at this point that Taffar first noticed Blanchard's "eyes were bloodshot and watery and that there was a slight odor of an alcoholic beverage coming from her person . . . ." Taffar continued questioning Blanchard about her alcohol consumption that day, and she indicated that she had "one and a half" drinks

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (86 S.Ct 1602, 16 LE2d 694) (1966).

before she left her house that morning.[4] Blanchard also took a preliminary breath test, which was positive for alcohol.

Thereafter, Blanchard was charged, via accusation, with DUI, driving with a suspended license, and having an open container of alcohol in her vehicle. In May 2015, Blanchard filed a motion to suppress all statements that she made to Taffar, arguing, *inter alia*, that she was unlawfully interrogated before being advised of her *Miranda* rights and that her "warrantless stop, detention, search and interrogation" by law enforcement violated the Fourth Amendment of the United State Constitution.[5]

---

[4] As noted by the State, Taffar initially testified that, after Blanchard was advised of her *Miranda* rights, she admitted to having "two drinks" before she left her house, without specifying the time period in which she had consumed those drinks. However, on cross-examination, Taffar specified that Blanchard reported having one and a half drinks in the morning, which he conceded would have been at least three hours before he encountered her at approximately 3:00 p.m. To the extent that Taffar gave conflicting testimony regarding Blanchard's alcohol consumption, we reiterate that we must view his testimony in the light most favorable to the trial court's ruling. *See, e.g.*, *Christian*, 329 Ga. App. at 245 (1). And regardless, the video recording of Taffar's conversation with Blanchard confirms that, although she first reported having a "couple" of drinks the evening before and on the morning of her arrest, she immediately clarified that she had one and a half drinks in the morning. We further note that, although Blanchard also reported having a "few" drinks on the day of her arrest, the trial court suppressed that statement because it was made in the patrol car before she was *Mirandized*, and the State does not challenge that ruling on appeal.

[5] *See* U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by

4

Following an evidentiary hearing, the trial court granted Blanchard's motion, finding that any statements she made after being detained, but before she was *Mirandized*, were inadmissible. The court also found that, although Taffar acted appropriately given his level of training, he lacked probable cause to arrest Blanchard for DUI because there was no evidence that her driving ability was impaired by alcohol consumption. This appeal by the State follows.[6]

In its sole enumeration of error, the State argues that the trial court erred in finding that there was insufficient probable cause to support Blanchard's arrest for DUI. We disagree.

To begin with, we note that in reviewing a trial court's decision on a motion to suppress, we construe the evidence "most favorably to uphold the findings and

Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

[6] *See* OCGA § 5-7-1 (a) (4) (authorizing the State, in criminal cases, to appeal "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first").

judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous."[7] Further, because the trial court sits as the trier of fact, its findings are "analogous to a jury verdict and will not be disturbed if any evidence supports them."[8] That said, we owe no deference to the "way in which the court below resolved questions of law."[9] With these guiding principles in mind, we turn now to the State's contention that there was sufficient probable cause to support Blanchard's DUI arrest.

In Georgia, probable cause exists for an arrest when "the objective facts known to the officer establish a probability that the suspect has been engaged in illegal activity."[10] And a "probability" is less than a certainty, but "more than a mere

---

[7] *Ewumi v. State*, 315 Ga. App. 656, 657 (1) (727 SE2d 257) (2012) (punctuation omitted).

[8] *Id.* at 657-58 (1) (punctuation omitted).

[9] *Id.* at 658 (1) (punctuation omitted).

[10] *Bostic v. State*, 332 Ga. App. 604, 606 (774 SE2d 175) (2015); *see also Minor v. State*, 298 Ga. App. 391, 396 (1) (b) (680 SE2d 459) (2009) ("Probable cause to arrest exists [when],based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed." (punctuation omitted)).

6

suspicion or possibility."[11] Accordingly, to arrest a suspect for DUI less safe to drive, an officer must have "knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol *to a degree which renders [her] incapable of driving safely. Mere presence of alcohol is not the issue.*"[12] Further, as we have recently explained, "the mere fact that a suspect admits to having consumed alcohol before driving does not provide the probable cause necessary to support an arrest for DUI."[13] Indeed, impaired driving ability depends solely upon "an individual's response to alcohol[,] [and] [b]ecause

---

[11] *Bostic*, 332 Ga. App. at 606 (punctuation omitted); *accord Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004).

[12] *Bostic*, 332 Ga. App. at 606-07 (punctuation omitted); *accord Handley v. State*, 294 Ga. App. 236, 237 (668 SE2d 855) (2008); *State v. Sanders*, 274 Ga. App. 393, 396, 617 SE2d 633, 636 (2005).

[13] *Bostic*, 332 Ga. App. at 607; *see also Handley*, 294 Ga. App. at 237 ("Evidence which shows only that a defendant had alcohol in her body while driving provides insufficient probable cause to arrest for DUI." (punctuation omitted)); *State v. Ellison*, 271 Ga. App. 898, 901 (3) (b), 904 (6) (611 SE2d 129) (2005) (affirming the trial court's finding that there was insufficient probable cause for a DUI arrest even when the defendant admitted that she had been drinking alcohol, and reiterating that "evidence which shows *only* that the defendant had alcohol in her body while driving provides insufficient probable cause to arrest for DUI").

7

individual responses to alcohol vary, the presence of alcohol, in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver."[14]

In arguing that there was sufficient probable cause for Taffar to reasonably believe that Blanchard was an impaired driver, the State references the following evidence: "Blanchard smelled of alcohol, had bloodshot, watery eyes, admitted to drinking before driving, admitted to mixing a drink while driving, had an open container of alcohol in her vehicle, demonstrated slight confusion, held on to the patrol vehicle door as she exited, and tested positive on the [preliminary breath] test." But regardless of whether this evidence, if believed by the trial court, could be adequate to provide probable cause for Blanchard's DUI arrest, the law does not require a trial judge to "believe the testimony of a witness or to find probable cause automatically whenever certain words are spoken."[15]

And here, the trial court summarized its factual findings as follows:

---

[14] *Bostic*, 332 Ga. App. at 607; *accord Handley*, 294 Ga. App. at 237-38; *Ellison*, 271 Ga. App. at 902 (3) (b).

[15] *Ellison*, 271 Ga. App. at 901 (3) (a); *accord Sanders*, 274 Ga. App. at 397; *see also State v. Young*, 334 Ga. App. 161, 163 (778 SE2d 402) (2015) ("[A] trial court is not obligated to believe a witness even if that witness's testimony is uncontradicted and may accept or reject any portion of the testimony." (punctuation omitted)).

[Blanchard] admitted that she had consumed alcohol the night before and 'earlier that morning.' It was at that point that [ ] Taffar first noted a 'slight odor' of an alcoholic beverage. No odor was detected during the initial encounter nor during their discussion in the patrol vehicle on the way to the detention center. [ ] Taffar also stated that [Blanchard] had slightly bloodshot and watery eyes but admitted on cross[-]examination that she had been crying and the appearance of her eyes [was] consistent with that emotion. Finally, [ ] Taffar asked [Blanchard] to submit to a preliminary breath test (PBT). [Blanchard] took the test and it registered positive for alcohol. No field sobriety evaluations were conducted. The only evidence on the record to support [Blanchard's] arrest for DUI is [her] admission, a slight odor, and a positive result on the PBT.

This Court finds that [ ] Taffar acted appropriately; however, at the time he was not field sobriety trained and lacked the necessary training to conduct a thorough investigation.[16] Based on the manifestations noted above, there was no evidence offered to prove that [Blanchard's] ability to drive was impaired due to alcohol consumption . . . . No other manifestations existed that would lead to the belief that [Blanchard] was impaired.

As detailed below, these findings were supported by the evidence.

---

[16] Although Taffar was trained in field-sobriety tests at the time of the suppression hearing, he had not yet received such training when he arrested Blanchard. As a result, no field-sobriety tests were performed in this case.

At the suppression hearing, Taffar testified that, during his interactions with Blanchard, she "walked properly" without stumbling, merged into the "gore area" at a safe speed, exhibited no "erratic or less safe driving behavior," exhibited no major or minor motor skill issues, and was polite and responsive to his questions. In fact, there was *nothing* in Blanchard's behavior that lead Taffar "to believe that she was impaired in any way." Moreover, it was undisputed that Taffar first approached Blanchard to assist her with car trouble, not because he had seen her driving in a manner that would suggest she was impaired. Further, the video of Blanchard's transport to the detention center confirms that she answered all of Taffar's questions promptly and clearly. And while Taffar testified that Blanchard's eyes were bloodshot and watery, and that he was able to smell the "slight" odor of alcohol emanating from her, he nevertheless confirmed that he did not make these observations upon first encountering Taffar or when they were in a confined space together in the patrol car with the safety panel to the backseat open. In fact, Taffar did not observe that Blanchard's eyes were bloodshot or smell any odor of an alcoholic beverage on her until after they arrived at the detention center, which was nearly *45 minutes* after he first encountered her.

The State argues that Taffar's testimony that Blanchard's eyes were bloodshot and watery, that he smelled the odor of alcohol, and that Blanchard admitted to drinking alcohol before driving, is sufficient to provide probable cause for her arrest, and it cites several cases in which we held that there was sufficient probable cause for a DUI arrest under similar circumstances. But this argument ignores the crucial role that the trial court plays as factfinder, as well as our obligation as an appellate court to uphold a trial court's findings if there is any evidence to support them.[17] And while the State is indeed correct that "[w]e have previously found that bloodshot and watery eyes, as opposed to the mere presence of alcohol, can support a finding of impairment,"[18] we have also explained that "such evidence does not *require* a finding

---

[17] *See Ewumi*, 315 Ga. App. at 657-58 (1); *Sanders*, 274 Ga. App. at 397-98 (noting that "[i]f the members of this Court had been sitting as the trier of fact, we might well have found that the officers had probable cause to arrest based on several indicia of impairment," but affirming the trial court's finding that there was insufficient probable cause to support a DUI arrest).

[18] *Ellison*, 271 Ga. App. at 904 (6); *see, e.g.*, *Temples v. State*, 228 Ga. App. 228, 231 (491 SE2d 444) (1997) (holding that there was sufficient probable cause for the defendant's DUI arrest when the evidence showed that the officer smelled the odor of alcohol on the defendant's breath, the defendant's eyes were bloodshot and watery, and his breath test was positive for alcohol).

11

of impairment."[19] And here, although there was evidence that Blanchard had bloodshot and watery eyes, there was no evidence that her eyes were glassy or unfocused.[20] Moreover, the trial court, as the factfinder, attributed the bloodshot appearance of Blanchard's eyes to the fact that she had been crying and did not consider it as evidence of impairment.

In sum, discounting the testimony regarding Blanchard's bloodshot and watery eyes as the trial court did, the remaining evidence presented to establish probable cause for Blanchard's DUI arrest was that she admitted to having one and a half alcoholic beverages the morning before her 3:00 p.m. arrest, she smelled slightly of an alcoholic beverage, her preliminary breath test was positive for alcohol, and she had an open container of alcohol in her purse. However, Blanchard exhibited no physical signs of impairment such as erratic driving, slurred speech, or stumbling.

---

[19] *Ellison*, 271 Ga. App. at 904 (6); *see also Bostic*, 332 Ga. App. at 607-08 (holding that there was insufficient probable cause for a DUI arrest when, *inter alia*, there was testimony that the defendant's were bloodshot and watery); *State v. Damato*, 302 Ga. App. 181, 183 (1) (690 SE2d 478) (2010) ("[W]hile bloodshot eyes and slightly paled skin may support a finding of impairment, such evidence does not require a finding of impairment." (punctuation omitted)).

[20] *See Bostic*, 332 Ga. App. at 607-08 (holding that there was insufficient probable cause for a DUI arrest when, *inter alia*, although the defendant's eyes were "bloodshot and watery, there [was] no evidence that [her] eyes were glassy or unfocused").

The foregoing evidence, then, supports the trial court's finding that, while there was evidence that Blanchard consumed alcohol before driving, there was no evidence that her driving ability was impaired due to such consumption. And because the mere presence of alcohol is insufficient probable cause for a DUI arrest, the trial court was authorized to find that there was no probable cause to support Blanchard's arrest for that charge.[21]

---

[21] *See Bostic*, 332 Ga. App. at 607-08 (holding that there was insufficient probable cause to arrest the defendant for DUI when the only evidence of a potential impairment was the defendant's admission that he had consumed a beer earlier that evening, the bloodshot appearance of his eyes, and a breath test showing the presence of alcohol); *Damato*, 302 Ga. App. at 182-83 (1) (holding that the "odor of alcohol on [the defendant's] breath, her admission that she had a few drinks earlier in the evening, and a positive result on [a breath] test do not provide probable cause to arrest her for DUI"); *Handley*, 294 Ga. App. at 238 (holding that there was insufficient probable cause for a DUI arrest when the only evidence offered was that the arresting officer smelled alcohol on the driver's breath, a breath test revealed the presence of alcohol, and the defendant admitted to drinking alcohol "earlier in the day"); *Ojemuyiwa v. State*, 285 Ga. App. 617, 620 (2) (647 SE2d 598) (2007) (holding that, although two officers detected "a strong odor of alcohol" coming from the defendant's person, that fact did not support an arrest for DUI when "there was no evidence presented whatsoever as to [the defendant's] manner of driving, that her speech was slurred, her gait unsteady, or her eyes red and glassy"); *Sanders*, 274 Ga. App. at 394-98 (affirming the trial court's finding that there was insufficient probable cause for a DUI arrest even when there was testimony that, *inter alia*, the defendant had glassy eyes and *admitted that he had been drinking*, and deferring to the trial court's finding that there was no evidence that the defendant was a less-safe driver). *Cf. Sultan v. State*, 289 Ga. App. 405, 409 (2) (657 SE2d 311) (2008) (holding that the trial court was authorized to conclude that probable cause supported an arrest for DUI when evidence showed that the officer detected the odor of alcohol coming from

13

For all of the foregoing reasons, we affirm the trial court's finding that Blanchard's DUI arrest was unsupported by probable cause, as well as its consequent grant of her motion to suppress evidence garnered as a result of that arrest.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

the defendant's vehicle, the defendant admitted to having consumed alcohol, her breath tested positive for the presence of alcohol, her speech was slurred and her eyes were red and watery, *and* she failed the one-leg stand field sobriety test).