**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**June 24, 2021**

# In the Court of Appeals of Georgia

A21A0119. JOHNSON v. THE STATE.

DOYLE, Presiding Judge.

Following a bifurcated jury trial, Yaseen Asabur Johnson was convicted of possession of a firearm by a convicted felon,[1] failure to stop at an accident,[2] and driving without a license.[3] Johnson moved for a new trial, and after he waived a hearing on the matter, the trial court denied his motion. Johnson now appeals, arguing that (1) there was insufficient evidence that the vehicle was attended to support his conviction for failure to stop at an accident; (2) his driving record was improperly admitted hearsay and/or he received ineffective assistance of counsel for failing to

---

[1] OCGA § 16-11-131 (b).

[2] OCGA § 40-6-270 (c).

[3] OCGA §§ 40-5-20 (a), 40-5-121 (a).

properly object to its admission; and (3) the order of restitution was not supported by the evidence. For the reasons that follow, we affirm in part and reverse in part.

Viewed in favor of the verdict,[4] the record shows that on April 18, 2018, at around 10:00 or 11:00 p.m., an officer responded to a call about a hit-and-run accident. Although it was dark, the street was "well-lit" from street lights. The officer observed a Ford Focus that was "pretty well damaged," and he talked to Jacqueline Harper, who had seen the vehicle driving on the road at a high rate of speed and then hitting her vehicle, after which accident two men exited the Ford Focus and ran away. The officer explained that Harper's vehicle was parked on the side of the road, and the Ford Focus had a "pretty brutal impact" with it, resulting in the Focus having to be towed from the scene — "pretty much the engine was hanging out of it." The officer observed that Harper's vehicle also appeared to be "totaled" and would, in his opinion, require towing from the scene, but she did not have it towed while he was there.

In the driver's seat of the Ford, the officer found a work identification card for Johnson, a .25 caliber handgun, and in the driver's floorboard, a cellphone playing

---

[4] See *Johnson v. State*, 279 Ga. App. 98, 99 (630 SE2d 612) (2006). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

loud music. Harper also identified Johnson, whom she knew as "Yay Yay," as the driver of the vehicle, upon which information the officer prepared a warrant for Johnson's arrest. The officer ran Johnson's name through the police computer system to obtain his Georgia state identification number, which he ran through national and state databases, resulting in the officer's discovery of Johnson's unlicensed status.

At trial, Harper testified, explaining that she was visiting her mother on the day in question, and she had her two children with her. When the visit was ending, she loaded up her car and had the car door open, when she saw a vehicle coming toward her car at "a very high speed." The vehicle collided with the front of hers, sending her car back into a telephone pole, resulting in damage to the front and rear end of her car. Harper testified that Johnson exited the driver's side of the speeding vehicle and another male exited the passenger side; although she did not know Johnson personally, she knew "of him" through her older cousins, and she identified him in the courtroom. Harper testified that it was "getting dark" at the time of the accident, and she recognized Johnson. After the men ran away, she went over to the other vehicle, and she saw an identification card and other things in the car.

Harper testified that although no one was in her vehicle when it was hit, her finger was injured because her hand was on the car door, and she had to pay approximately $1,000 for her insurance deductible to have her car repaired.

The State tendered into evidence certified copies of three of Johnson's prior convictions for driving without a license or driving with a suspended license. The State also tendered a certified copy of Johnson's driving history from the State of Georgia Department of Driver Services ("DDS"), which listed his permit status as "not licensed," his "regular status" as "suspension (all)," and his "CDL Status" as "suspension (all)."

Johnson moved for a directed verdict as to the charge of driving without a license because the certified driving record was not properly authenticated and because no one testified that he did not have a license at the time of the incident, which motion the trial court denied. The jury was first presented with the charges of failing to stop at an accident and driving without a license, for which they returned guilty verdicts, finding specially that Johnson had been guilty of three prior driving without a license convictions in the five prior years. Next, the jury was presented with the charge of possession of a firearm by a convicted felon, in support of which the

4

State tendered Johnson's prior felony conviction for possession of cocaine. The jury returned a guilty verdict as to that charge as well.

1. Johnson argues that the trial court erred by denying his motion for new trial because there was insufficient evidence that Johnson knowingly left the scene of an accident with an attended vehicle, which requires the reversal of his conviction for failure to stop at an accident.

In order to establish the violation of OCGA § 40-6-270 (a), the State must show that the driver of a vehicle involved in an accident resulting in damage to another "vehicle that is driven or attended by any person," knowingly failed to stop at the scene of the accident or "provide the driver of the other vehicle with certain personal information, including his name, address, and vehicle registration number, and to show his driver's license."[5] Harper testified that her hand was injured from the impact of the accident because her hand was on the door at the time. Thus, there was sufficient evidence from her testimony for the jury to find that the vehicle was "attended" at the time of the accident.[6]

---

[5] *State v. Sevostiyanova*, 313 Ga. App. 729, 739 (14) (722 SE2d 333) (2012).

[6] Compare with *Melvin v. State*, 225 Ga. App. 169, 171 (2) (483 SE2d 146) (1997) (reversing conviction under OCGA § 40-6-270 because the complainant heard the defendant hit her vehicle while she was inside her apartment, and no other

5

Although Johnson also contends that there was insufficient evidence to support this verdict because Harper did not testify that Johnson turned around and saw her at the vehicle prior to leaving the scene of the accident, it was not necessary for the State to establish actual knowledge in order to establish beyond a reasonable doubt that Johnson violated OCGA § 40-6-270 (a). "To prove the knowledge element of the offense, it is not absolute and positive knowledge which must be shown, but rather only that the circumstances were such that a reasonable person would have believed that an accident had occurred resulting in death, damage[,] or injury to another."[7] Based on Harper's and the officer's testimony as to the severity of the crash and Johnson's behavior of running immediately from the scene, the jury was authorized to find that a reasonable person would have believed that an accident occurred for which he needed to stop and give his information.[8] The jury was authorized to find that had Johnson looked at the vehicle he had hit, he would have discovered that it was attended by Harper, who was touching the vehicle when Johnson drove into it.

individual was in or near the complainant's vehicle during the accident).

[7] (Punctuation omitted.) *Sevostiyanova*, 313 Ga. App. at 739 (14), quoting *Dalton v. State*, 286 Ga. App. 666 (650 SE2d 591) (2007).

[8] See id.

6

Accordingly, the trial court did not err by denying Johnson's motion for new trial as to this issue.

2. Johnson also argues that the trial court erred by admitting his driving history, arguing that it was hearsay. A certified copy of Johnson's driving history was admitted into the record in two parts based on the objection of Johnson's attorney. And the second portion of the driving history did not go out with the jury, but was submitted to the Court, which included an official notice of license suspension issued to Johnson on February 6, 2018.

In its order denying his motion for new trial, the trial court relied on former OCGA § 24-3-17 in order to uphold its determination that the State was permitted to admit Johnson's driving record because it was "a certified copy of a Department of Public Safety [("DPS")] record."[9] This former statute is now codified in OCGA § 24-9-924 (a):

---

[9] *Allman v. State*, 258 Ga. App. 792, 794 (2) (575 SE2d 710) (2002). Former OCGA § 24-3-17 stated that "(a) A certified copy of any record of the [DPS] or the [DDS] or comparable agency in any other state is admissible in any judicial proceedings or administrative hearing in the same manner as the original of the record. (b) Any court may receive and use as evidence in any case information otherwise admissible from the records of the [DPS] or the [DDS] obtained from any terminal lawfully connected to the [GCIC] without the need for additional certification of those records."

7

Any court may receive and use as evidence in any proceeding information otherwise admissible from the records of the [DPS] or the [DDS] obtained from any terminal lawfully connected to the Georgia Crime Information Center [("GCIC")] without the need for additional certification of such records.

In this case, Johnson's driving record was accompanied by the signature of an official custodian of the DDS stating that it was "a true and correct copy of the original as appears in the [DDS]." Thus, a proper foundation was laid for its admission without the need for additional testimony.[10] Here, no one testified to obtaining the record, it was merely entered into evidence by the State, but because it

---

[10] See *Hann v. State*, 292 Ga. App. 719, 723 (6) (665 SE2d 731) (2008) (decided under former OCGA § 24-3-17), citing *Allman*, 258 Ga. App. at 794 (2) (affirming conviction because the State introduced a certified copy of the driver's history in addition to testimony that the record was obtained from a computer connected to the GCIC); *Buckley v. State*, 246 Ga. App. 342, 343 (540 SE2d 292) (2000) (reversing because the State failed to establish that the GCIC driver's history was a certified copy or was obtained from a computer terminal lawfully connected to the GCIC computer). Compare with *Christian v. State*, 329 Ga. App. 244, 247-248 (2) (764 SE2d 573) (2014) (explaining that this Court has "held that, pursuant to the plain terms of [former OCGA § 24-3-17], the State presents a sufficient foundation for the admission of GCIC printouts when it shows that the document was "obtained from a computer terminal lawfully connected to the GCIC. And we have further held that the State accomplishes this when a witness testifies to personally obtaining the printouts from a GCIC terminal or identifies the printouts as having been obtained from a specific GCIC terminal, but not when a witness merely testifies to obtaining a printout from some other source or when the State only argues that a printout was obtained from a lawfully connected terminal.") (citations omitted).

8

was certified by the DDS official custodian, it was sufficient to meet the statutory requirement. Moreover, the jury was authorized to find based on the statements in the documents that Johnson was not licensed to drive in Georgia. Although Johnson seems to argue that it was possible he was legally permitted to drive in Georgia at the time of the accident, in the face of the documentary evidence, he offered only speculative argument which was for the jury to accept or reject. Driving a vehicle is not an activity for which all people of age automatically have authorization in which to participate,[11] and the evidence presented by the State supports the jury's verdict that Johnson was not authorized to drive at the time of the accident. Accordingly, this enumeration is without merit.[12]

3. Johnson also argues that the trial court erred by sentencing him to restitution without sufficient evidence of damage or injury. The State initially requested $1,750 in restitution, but reduced it to $1,000 based on Harper's testimony. The sentencing document in the record, however, establishes that no restitution was ordered but the

_____

[11] See *Ward v. State*, 188 Ga. App. 372, 373 (1) (373 SE2d 65) (1988) ("the right to operate a motor vehicle upon the public highways of this State is a qualified right which can be exercised only by obtaining a driver's license from the State.").

[12] Johnson's abundantly cautious argument that he received ineffective assistance of counsel as to this issue is likewise without merit.

9

record was kept open for a hearing within six months. Although the record on appeal has not been updated with a final amount of restitution,[13] the trial court is not authorized to order restitution for the conviction of leaving the scene of the accident.[14]

*Judgment affirmed in part and reversed in part. Reese and Brown, JJ., concur.*

---

[13] See, e.g., *Neuman*, __ Ga. ___, ___ (4) (b) (iv) (Case No. S20A1143, decided Mar. 15, 2021) ("the burden is on the party alleging error to show it") (punctuation omitted), citing *Roberson v. State*, 300 Ga. 632, 636 (III) (797 SE2d 104) (2017); *Crawford v. State*, 288 Ga. 425, 427 (2) (a) (704 SE2d 772) (2011) ("An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. When a portion of the evidence bearing upon the issues raised by the enumerations of error is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result.") (punctuation omitted).

[14] See, e.g., *Zipperer v. State*, 299 Ga. App. 792, 794 (2) (683 SE2d 865) (2009) (explaining that a defendant's "conviction for failure to stop after the collision could not, as a matter of law, include restitution for damages that were not caused by her failure to stop" — the failure to stop *after* the collision was not the cause of any damage). Nor, in this case, would the defendant's convictions for driving without a license or being a felon in possession of a firearm support such an award. And to the extent that the State argues that Johnson waived this argument, *Zipperer* establishes that this argument is without merit. Id. at 794 (2) ("[E]ven though Zipperer's counsel waived a restitution hearing and stipulated to the amount of damage to the other driver's car, such actions do not waive appellate review of the legality of the restitution order.").