**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 25, 2015**

# In the Court of Appeals of Georgia

A15A0600. BOSTIC v. THE STATE.

BRANCH, Judge.

Perry Bostic appeals from an order of the Laurens County Superior Court denying Bostic's motion to suppress the results of his alcohol breath test, which were obtained following Bostic's arrest for DUI less safe.[1] Specifically, Bostic contends that the trial court erred in finding that police had probable cause to arrest him for DUI. We agree and therefore reverse the order of the trial court.

The evidence in this case was uncontested and consisted of the testimony of the arresting officer and a videotape of the traffic stop of Bostic's car and his subsequent

---

[1] See OCGA § 40-6-391 (a) (1) (prohibiting any person from being "in actual physical control of any moving vehicle while . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive"). Although Bostic's motion to suppress also argued that the traffic stop of his car was illegal, Bostic has not pursued that argument on appeal. Accordingly, the trial court's ruling that the traffic stop itself was lawful is not at issue.

arrest. Moreover, on appeal Bostic does not dispute any factual findings made by the trial court in its order denying his motion to suppress. Rather, he contends that the trial court erred as a matter of law in finding that these facts provided probable cause to arrest Bostic for DUI. Accordingly, because there are no disputed facts, we review de novo the trial court's application of the law to those facts. *Williams v. State*, 318 Ga. App. 715 (734 SE2d 535) (2012). See also *Silva v. State*, 278 Ga. 506, 507 (604 SE2d 171) (2004).

The record shows that Michael Talbott, an officer with the Dublin Police Department, observed a car driven by Bostic with the license plate partially obscured by the frame surrounding the tag.[2] Talbott therefore initiated a traffic stop of the vehicle. Upon making contact with Bostic, Talbott noticed that Bostic's eyes were bloodshot and watery, so the officer asked Bostic if he had been drinking. Bostic responded that he had consumed one beer approximately one hour earlier. In response to further questions from Talbott, Bostic admitted that his driver's license was currently suspended as a result of a previous DUI charge. The officer then asked Bostic if he would be willing to "take some tests" and Bostic agreed. Talbott had Bostic exit his vehicle and walk to Talbott's patrol car where Talbott administered an

---

[2] According to Talbott, although he could read the license plate, the frame partially obscured the sticker indicating the tag's expiration date.

2

alco-sensor test, which showed that alcohol was present on Bostic's breath. Talbott did not conduct any field sobriety tests because, as best he could recall, he was not certified at that time to conduct such tests.

Based on Bostic's admission that he had consumed a beer earlier in the evening, the appearance of his eyes, and the positive alco-sensor test, Talbott arrested Bostic for DUI less safe. Talbott then read Bostic Georgia's implied consent notice[3] and after being asked three times, Bostic agreed to submit to an alcohol breath test.

---

[3] The applicable implied consent notice for suspects age 21 or over is set forth in OCGA § 40-5-67.1 (b) (2) and states:

> "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?"

3

The results of that test showed that Bostic had a blood alcohol level above the legal limit.

Bostic was subsequently indicted for improper display of license plate, driving without a license, DUI per se, and DUI less safe to drive. Prior to trial, Bostic filed a motion to suppress the results of his alcohol breath test on the grounds that Talbott lacked probable cause to arrest him for DUI.[4] Following a hearing on that motion, the

---

[4] The DVD of the traffic stops shows that at the time he arrested Bostic, Talbott informed him only that he was under arrest for DUI. At the hearing below, however, Talbott testified that he had also arrested Bostic for driving without a license. It may be that Talbott had probable cause to arrest Bostic for that offense. This issue is not before us, however, as it was neither raised, argued, nor ruled on below. See *Harris v. State*, 265 Ga. App. 876, 877 (1) (a) (595 SE2d 683) (2004). Moreover, on appeal the State does not argue that an arrest for driving without a license would support the admission of that evidence which Bostic sought to suppress, i.e., the results of his alcohol breath test. As a matter of law, that evidence is the fruit of Bostic's arrest for DUI. This conclusion results from the fact that Georgia law does not empower officers to request that every individual they arrest for any kind of traffic violation submit to chemical tests designed to detect the presence of alcohol in the blood. Rather, an officer has the right to request that a person submit to such tests only where the officer has arrested that person for DUI or where that person "has been involved in a traffic accident resulting in serious injuries or fatalities." OCGA § § 40-5-55 (a), 40-5-67.1. See also *Massey v. State*, 331 Ga. App. 430m 432 (1) (771 SE2d 122) (2015) ("[a]n officer's authority to request at the time of arrest that a driver submit to . . . chemical testing for alcohol or drugs . . . derives from the implied consent provisions of OCGA § 40-5-55(a)"). Thus, Georgia's implied consent notice, pursuant to which Bostic consented to the alcohol breath test, is read to an individual only when that person has been arrested for DUI or was "involved in a traffic accident resulting in serious injuries or fatalities." OCGA § 40-5-67.1 (a). Accordingly, with respect to Bostic's motion to suppress, the relevant question is whether Talbott had probable cause to arrest Bostic for DUI and not whether Talbott had probable cause to arrest Bostic for some other traffic violation.

trial court denied the same, but certified its order for immediate review. Bostic then filed an application for an interlocutory appeal, which we granted. This appeal followed.

Probable cause exists for an arrest where the objective facts known to the officer establish a probability that the suspect has been engaged in illegal activity. See *Campbell v. State*, 313 Ga. App. 436, 438 (721 SE2d 649) (2011). A "probability" is "less than a certainty but more than a mere suspicion or possibility." *Gregoire v. State*, 285 Ga. App. 111, 113 (1) (645 SE2d 611) (2007) (footnote omitted). Thus, to arrest a suspect for DUI less safe to drive, an officer must "have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol *to a degree which renders him incapable of driving safely. Mere presence of alcohol is not the issue.*" *State v. Sanders*, 274 Ga. App. 393, 396 (617 SE2d 633) (2005) (punctuation and footnotes omitted; emphasis supplied). Accordingly, the mere fact that a suspect admits to having consumed alcohol before driving does not provide the probable cause necessary to support an arrest for DUI. *Handley v. State*, 294 Ga. App. 236, 237 (668 SE2d 855) (2008); *State v. Ellison*, 271 Ga. App. 898, 901 (3) (b) (611 SE2d 129)

5

(2005). "Impaired driving ability depends solely upon an individual's response to alcohol. Because individual responses to alcohol vary, the presence of alcohol, in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver." *Ellison,* 271 Ga. App. at 902 (3) (b) (punctuation and footnote omitted). See also *Armour v. State*, 315 Ga. App. 745, 747 (1) (728 SE2d 270) (2012) ("evidence which shows *only* that a defendant had [alcohol] in her body while driving provides insufficient probable cause to arrest for DUI") (punctuation and footnote omitted; emphasis in original); *Slayton v. State*, 281 Ga. App. 650, 652 (1) (637 SE2d 67) (2006) ("a positive alco-sensor result shows only the presence of alcohol, not that the driver is intoxicated and it is less safe for him to drive").

Here, the evidence shows that Talbott did not have probable cause to believe that Bostic's driving ability was impaired due to alcohol consumption. The officer testified that he initiated the traffic stop not because of Bostic's driving, but because of an obstructed license plate. The video of the stop shows that Bostic answered all of Talbott's questions promptly and that his speech was clear. Bostic can be seen on the video exiting his vehicle and walking to the patrol car, and his gait was steady and otherwise normal. Although Talbott testified that Bostic's eyes were bloodshot and watery, there is no evidence that Bostic's eyes were glassy or unfocused. As the trial

6

court's order reflects, the only evidence of a potential impairment available to Talbott was Bostic's admission that he had consumed a beer earlier that evening, the appearance of his eyes, and the alco-sensor test showing the presence of alcohol. While this evidence could give rise to the suspicion or possibility that Bostic was an impaired driver, it "is insufficient as a matter of law to constitute probable cause to arrest [Bostic] for driving under the influence." *Handley*, 294 Ga. App. at 238 (fact that officer smelled alcohol on driver's breath and that alco-sensor test revealed the presence of alcohol did not provide officer with probable cause to arrest driver for DUI) (citations omitted). See also *State v. Damato*, 302 Ga. App. 181, 182-183 (1) (690 SE2d 478) (2010) (fact that officer smelled alcohol on defendant's breath, that her eyes were bloodshot, and that she admitted having consumed alcohol several hours before was insufficient to provide the officer with probable cause to arrest for DUI); *Ojemuyiwa v. State*, 285 Ga. App. 617, 620 (2) (647 SE2d 598) (2007) (although two officers detected "a strong odor of alcohol" coming from the defendant's person, that fact did not support an arrest for DUI where "there was no evidence presented whatsoever as to [the defendant's] manner of driving, that her speech was slurred, her gait unsteady, or her eyes red and glassy"). Compare *Armour*, 315 Ga. App. at 747 (2) (probable cause to arrest for DUI existed where officer

7

detected odor of burnt marijuana, driver admitted smoking marijuana daily, driver's eyes were bloodshot and her pupils dilated, and officer's evaluation of driver's performance on field sobriety tests led him to conclude she was an impaired driver); *Sultan v. State*, 289 Ga. App. 405, 409 (1) (657 SE2d 311) (2008) (probable cause supported arrest for DUI where evidence showed that the officer detected the odor of alcohol coming from driver's vehicle, driver admitted to having consumed alcohol, her breath tested positive for the presence of alcohol, her speech was slurred and her eyes were red and watery, and she failed the one-leg stand field sobriety test).

Given that Talbott lacked probable cause to arrest Bostic for DUI, we reverse the order of the trial court denying Bostic's motion to suppress any evidence obtained as a result of that arrest.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*