**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 22, 2024**

# In the Court of Appeals of Georgia

A24A0328. THE STATE v. JONES.

BROWN, Judge.

Christopher Lee Jones was charged with DUI per se, OCGA § 40-6-391 (a) (5), DUI less safe, OCGA § 40-6-391 (a) (1), reckless driving, OCGA § 40-6-390, and driving on the wrong side of the road, OCGA § 40-6-40. The State appeals from the grant of Jones' motion to suppress evidence. For the reasons discussed below, we affirm in part, vacate in part, and remand the case with direction.

When conducting an appellate review of a ruling on a motion to suppress evidence, we follow three fundamental principles: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact

and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Edwards v. State*, 357 Ga. App. 396, 396-397 (850 SE2d 837) (2020). "To properly follow the first principle, we must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact." (Citation and punctuation omitted; emphasis in original.) *State v. Rouse*, 309 Ga. App. 536 (710 SE2d 670) (2011). See also *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (on appeal from the grant or denial of a motion to suppress, appellate courts must "focus on the facts found by the trial court *in its order*") (citation and punctuation omitted; emphasis in original). "An appellate court may, however, consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape." (Citation and punctuation omitted.) *State v. Bly*, 367 Ga. App. 786, 787 (888 SE2d 593) (2023).

So viewed, the evidence before the trial court consisted of testimony from the officer who conducted the traffic stop; a deputy who was called to the scene to conduct the horizontal gaze nystagmus (HGN) test; and video footage of the stop and

subsequent investigation. That evidence showed that on September 27, 2022, at approximately 9:00 p.m., the officer was on his way to assist with an unrelated traffic stop when he observed Jones turn left into the exit lane of a divided entrance/roadway. The officer initiated a traffic stop at which point Jones stopped his vehicle, got out, and approached the officer's patrol car. Jones told the officer that he could not see. After asking Jones for his driver's license, the officer observed that Jones smelled of alcohol, and that his eyes were bloodshot and "glossed over." Jones admitted to drinking "a few" at which point the officer returned to his patrol car to run a check on Jones' driver's license and call for backup. After Jones explained to the officer that he was out driving because he had an argument with his wife — and approximately three minutes into the traffic stop — the officer advised Jones that he needed to run "a couple of evaluations to determine if [Jones was] safe to drive" and to "hang tight" while he waited for another unit.[1]

---

[1] The officer testified that "another [unit] was called in to do [the HGN evaluation]" because the officer was not certified to do HGN. The officer was, however, certified to conduct other field sobriety tests. When asked during the hearing if he needed backup to perform the HGN, the officer testified that he needed "[j]ust backup period" and that he "always wait[s] for a backup officer, a secondary officer before doing any kind of field evaluations. That is for both parties' safety, if anything."

After advising Jones to "hang tight," the officer got back in his patrol car for about three minutes and then moved it out of the roadway. Approximately seven minutes into the traffic stop, he exited his patrol car and waited with Jones for the other unit to arrive. While waiting, the officer and Jones made small talk, discussing Jones' mother's health, when the officer moved to Georgia, and other topics. Approximately eleven minutes after the officer called for a second unit, a deputy showed up and conducted the HGN evaluation.[2] After the deputy conducted the HGN evaluation, the officer conducted other field sobriety tests on Jones, including walk and turn and one-leg stand. Approximately 23 minutes into the traffic stop, the officer retrieved a portable breath test (PBT) from his patrol car and performed a breath test on Jones, which was positive for the presence of alcohol. At this point, Jones asked the officer, "why did we do all of that, when we could have just done

---

[2] Although the officer and deputy both testified that the deputy relayed the HGN findings to the officer, the video does not reflect any conversation between the two after the deputy completed the test and before the officer begins his evaluations. The trial court did not credit this testimony in its order, finding that "the video [did] not even show the [o]fficer conversing with the [d]eputy about the results of the HGN before he starts his evaluation. Thus, it appears to the [c]ourt that even the results of the HGN were not necessary or desired in order for the [o]fficer to conduct his investigation."

4

this?" Jones was arrested for DUI. The officer held onto Jones' driver's license during the entire investigation.

At the conclusion of the hearing, the trial court granted the motion to suppress all evidence obtained after the officer began waiting for the second unit to arrive, ruling that the officer failed to diligently pursue a means of investigation likely to confirm or dispel his suspicions that Jones was driving under the influence, and that the detention was prolonged more than necessary. The court ruled, however, that the State can use any evidence gained before that time and found that the question of "whether [Jones'] arrest lacked probable cause is moot since the [c]ourt has suppressed all post-arrest evidence." In so ruling, the trial court found that the while the DUI investigation was initially valid, the officer pursued no investigation until the deputy arrived even though he was trained in conducting other field sobriety tests and had a PBT readily available in his patrol car, and that his standard procedure of waiting for backup was not a reasonable explanation for not undertaking some investigation. Indeed, the trial court found that it was the officer's "personal preference" to wait for backup, implicitly rejecting his safety claim. This appeal followed.

1. The State contends that the trial court erred in suppressing all evidence obtained after the officer began waiting for the second unit to arrive because Jones' detention was reasonable under the circumstances and supported by reasonable articulable suspicion. We disagree.

The United States Supreme Court has held that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U. S. 491, 500 (II) (103 SCt 1319, 75 LE2d 229) (1983). See also *Mullins v. State*, 355 Ga. App. 452, 455 (1) (844 SE2d 519) (2020).

> Claims that such a detention was unreasonably prolonged are of two sorts. In [the first sort], a detention is prolonged beyond the conclusion of the investigation that warranted the detention in the first place, and in those cases, the courts generally have concluded that such a prolongation — even a short one — is unreasonable, unless, of course, good cause has appeared in the meantime to justify a continuation of the detention to pursue a different investigation. In [the second sort], the detention is not prolonged beyond the conclusion of the investigation that originally warranted the detention, but it is claimed that the investigation took too long, perhaps because the officer spent too much time inquiring about matters unrelated to the investigation. In these cases, the courts examine

> whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

(Citations and punctuation omitted.) *Rodriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014). The central question is "whether the detention was appreciably prolonged, considering the detention as a whole, and keeping in mind that the touchstone of our inquiry is reasonableness." (Citation and punctuation omitted.) Id. at 370 (2) (b). It is the State's burden of proving that the duration of the detention was reasonable. See *Royer*, 460 U. S. at 500 (II). See also *Mullins*, 355 Ga. App. at 456 (1). "A trial court's conclusion that a traffic stop was unreasonably prolonged may often be a fact-intensive determination, but it is ultimately a holding of constitutional law that we review de novo." *State v. Allen*, 298 Ga. 1, 4 (2) (779 SE2d 248) (2015). See also *Weaver v. State*, 357 Ga. App. 488 (851 SE2d 125) (2020). Moreover, as our Supreme Court has recognized, while a police officer is "not constitutionally required to move at top speed or as fast as possible, . . . [the] officer [must] pursue[ the] investigation with reasonable diligence" so as not to offend the Fourth Amendment. *Rodriguez*, 295 Ga. at 371 (2) (b).

Jones alleged that this case presents the second sort of claim, arguing in his motion to suppress that the officer unreasonably prolonged the traffic stop because he could have conducted other field sobriety tests while waiting for the second unit to arrive to perform the HGN evaluation. The trial court agreed and we agree with the trial court that Jones' detention was unreasonably prolonged. In particular, the State failed to establish why it was reasonable for the officer to detain Jones while waiting for a second unit without performing any field sobriety tests when the evidence showed that (1) the officer was certified to perform two of the field sobriety tests he eventually performed; (2) he had a PBT in his patrol car which he eventually used on Jones; and (3) the deputy never disclosed to the officer the results of the HGN test. Moreover, although the officer testified that it was his routine practice to wait for backup before conducting a DUI investigation "for both parties' safety, if anything," the trial court seemingly rejected this rationale as unreasonable given that the officer spent the time waiting outside his patrol car engaging in small talk with Jones. We, therefore, conclude that the trial court did not err in granting the motion to suppress on the ground that the detention was unreasonably prolonged. See *Mullins*, 355 Ga. App. at 455-456 (1). Compare *State v. Holt*, 334 Ga. App. 610, 611-612 (780 SE2d 44)

(2015) (reversing grant of motion to suppress where trooper who had been sent to investigate a vehicle incident observed signs of alcohol consumption in defendant, conducted breath test which tested positive for alcohol six minutes after stopping defendant, and then radioed for another trooper).

2. The State contends that the trial court erred in granting Jones' motion to suppress because there was probable cause for his arrest regardless of the field-sobriety evaluations and the prolonged delay. In its order, the trial court noted that it had "suppressed all evidence obtained after the [o]fficer began waiting on the [d]eputy to arrive to assist him [and that] [a] ruling on lack of probable cause to arrest is deemed moot." After concluding that Jones' detention was unreasonably prolonged, the trial court then ruled as follows:

> As such, any evidence gained after this point is excluded — both pre-arrest and post-arrest evidence. [The] State can use any evidence in its case in chief that was gained BEFORE that point. The issue of whether [Jones'] arrest lacked probable cause is moot since the [c]ourt has suppressed all post-arrest evidence.

> As this Court has explained,

> [p]robable cause exists for an arrest where the objective facts known to the officer establish a probability that the suspect has been engaged in

illegal activity. A probability is less than a certainty but more than a mere suspicion or possibility. Thus, to arrest a suspect for DUI less safe to drive, an officer must have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol *to a degree which renders him incapable of driving safely. Mere presence of alcohol is not the issue.*

(Citations and punctuation omitted; emphasis in original.) *Bostic v. State*, 332 Ga. App. 604, 606-607 (774 SE2d 175) (2015). See also *State v. Culler*, 351 Ga. App. 19, 23 (1) (830 SE2d 434) (2019). When engaging in a probable cause analysis, "a court must consider the facts and circumstances altogether, for it is the totality of those facts and circumstances that matters, not any one fact or circumstance standing alone." (Citation and punctuation omitted.) *Culler*, 351 Ga. App. at 23. However, where "the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings." *Hughes*, 296 Ga. at 746 (1), n.6.

In this case, the trial court deemed the issue of probable cause moot, without engaging in any analysis as to whether Jones was under the influence of alcohol to a

degree which rendered him incapable of driving safely.[3] See *Bostic*, 332 Ga. App. at 607. While the trial court's order acknowledged certain testimony by the officer necessary for establishing probable cause to arrest for DUI less safe, it offered no guidance as to whether it found that testimony credible and made no specific factual findings related to a probable cause analysis. See, e.g., *Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017) (vacating this Court's decision reversing grant of motion to suppress and remanding to the trial court "for further clarification on the specific findings that form the basis for its legal conclusions" including whether it credited the officer's testimony). Because the trial court's order lacks sufficient detail to enable meaningful appellate review on the issue of probable cause to arrest for DUI less safe, we vacate that portion of the order and remand the case for further proceedings

---

[3] We recognize that the trial court's statement in its order that "[the] State can use any evidence in its case in chief that was gained BEFORE" the officer began waiting on the deputy, could be interpreted as a finding that the officer had probable cause to arrest for DUI less safe based on the fact that the officer smelled alcohol on Jones' breath, that Jones' eyes were "glossed over," and that he admitted to having "a few." However, given the standard on a motion to suppress and the requirement that we focus on the facts found by the trial court in its order, we will not assume such a conclusion without an express statement by the trial court. See, e.g., *Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017) (vacating and remanding grant of motion to suppress "for further clarification on the specific findings that form the basis for [the trial court's] legal conclusions").

consistent with this opinion. See id. See also *Culler*, 351 Ga. App. at 27 (2) (a) (vacating and remanding for trial court to consider further questions regarding administration of the HGN test); *Martinez v. State*, 347 Ga. App. 675, 685 (C) (ii) (820 SE2d 507) (2018).

*Judgment affirmed in part and vacated in part, and case remanded with direction.*

*Dillard, P. J., and Padgett, J. concur.*